**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.H., T.T., K.T., B.H., and M.H.-M.**

**No. 20-0502** (Kanawha County 19-JA-189, 19-JA-190, 19-JA-191, 19-JA-192, and 19-JA-193)

**MEMORANDUM DECISION**

Petitioner Mother S.R., by counsel Erica Lord, appeals the Circuit Court of Kanawha County's April 10, 2020, order terminating her parental rights to A.H., T.T., K.T., B.H., and M.H.-M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she could not rectify the issues leading to the petition's filing in the near future and terminating her parental rights without first granting her a post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the instant petition's filing, the children's biological parents' parental rights were terminated after they failed to successfully participate in child abuse and neglect proceedings and address their issues with drug addiction. Petitioner, the children's maternal grandmother, adopted the children following those proceedings.[2] The circuit court specifically instructed petitioner not to allow the children's biological parents to contact them.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The record is unclear as to when the biological parents' parental rights were terminated or how much time passed between the termination of their rights and the instant petition's filing.

In March of 2019, the DHHR filed the instant petition against petitioner after it determined that she was permitting the children to have contact with their biological parents, against court order. Specifically, the DHHR stated that petitioner was allowing the children's biological mother to reside in the same home as the children. The DHHR also alleged that petitioner allowed the children's aunt to smoke methamphetamine at the residence. The DHHR further reported that police officers conducted a raid of petitioner's home and found drugs, large amounts of cash, and a convicted felon hiding in the bathroom with drugs and a knife on his person. Allegedly, all five children were present during the raid, as were the biological parents. Petitioner waived her preliminary hearing.

At an adjudicatory hearing held in August of 2019, the circuit court adjudicated petitioner as an abusing parent and granted her supervised visitation. Sometime thereafter, petitioner moved from the home that was raided by police and obtained a new residence. Petitioner assured the parties that she would not allow the biological mother in the home and stated that she would purchase security cameras that could be monitored by the parties to see if the biological mother was present.

The circuit court held a dispositional hearing in March of 2020. A DHHR service provider testified regarding petitioner's participation in supervised visitation with the children. According to the provider, the visits went well, but there had been concerns at times, such as when petitioner discussed the case in front of the children. The provider also expressed concern over petitioner's ability to care for the younger children as she delegated tasks, such as checking the youngest child's diaper, to the older children. The provider further testified that petitioner gave a random pill bottle with change in it to one of the children and that a pill had been found inside by the foster parent.

The provider also testified about a walkthrough she and a Child Protective Services ("CPS") worker had done of petitioner's new home. The provider stated that they found evidence of the children's biological mother living in the home despite the fact that the circuit court repeatedly informed petitioner that the children were not to have contact with their biological mother. The provider explained that she and the CPS worker found a bed and food in a refrigerator in the basement of petitioner's home, along with mail addressed to the biological mother and up-to-date prescriptions in the biological mother's name. The provider opined that she did not believe petitioner would keep the biological mother away from the children.

Petitioner testified and denied that she permitted the biological mother to reside in her home after the petition was filed. Petitioner testified that the drinks and other evidence of someone living in the basement belonged to her plumber, a friend, who had been working on her basement and that he and his family needed to stay one night there. Petitioner claimed that the biological mother's medication must have accidently been picked up when she moved from her prior residence. Petitioner also claimed that someone she "didn't even know" gave the biological father petitioner's new address and that he sent the mail addressed to the biological mother. Further, petitioner claimed that she was unable to install a security camera but had purchased several that malfunctioned. Petitioner essentially denied all the allegations against her, including allegations upon which she had already been adjudicated, and placed blame on others.

By order entered on April 10, 2020, the circuit court found that petitioner had knowledge of the biological mother's ongoing substance abuse and criminal activities yet allowed the biological mother around the children. The circuit court found that petitioner "maintained ignorance about the drug activities occurring in her home." Additionally, the court found that petitioner's claims were "fabricated" and that she cannot be trusted to protect the children from their biological parents or other family members who are drug addicts. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Petitioner appeals the April 10, 2020, dispositional order terminating her rights to the children.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her an improvement period. Petitioner claims that, without an improvement period, she had no opportunity to address her shortcomings prior to the termination of her parental rights. Petitioner states that the case "revolves around the ability of [petitioner] to provide the children with a stable environment." She acknowledges that at the time the children were placed with her, she lived near the children's biological father and claims that her home was always appropriate during the biological parents' proceedings. Petitioner states that she moved to a new home in a different neighborhood and that the home was also appropriate for the children. Petitioner claims that by denying her motion for an improvement period, the circuit court never gave her the opportunity to participate in services or rectify the problems in her parenting.

---

[3]The biological parents' parental rights were terminated in prior proceedings. A.H., T.T., and K.T. are placed together in a foster home with a permanency plan of adoption therein. B.H. was placed in a separate foster home with a permanency plan of guardianship. M.H.-M. is nearing adulthood and the DHHR is working with her towards a plan of independent living.

At the outset we note that petitioner fails to cite to any portion of the record demonstrating that she requested, either orally or in writing, an improvement period. This Court has long held, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

Nevertheless, even assuming that petitioner properly requested an improvement period, we find no error in the circuit court's refusal to grant the same. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (quoting W. Va. Code § 49-6-12(b)(2) (1996)).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Petitioner was instructed on numerous occasions that the biological parents were not to be in contact with the children. Petitioner assured the parties that she would not permit the biological parents to contact the children and offered to install security cameras as a good faith effort to demonstrate that she would protect the children. However, a service provider and a CPS worker conducted a walk-through of petitioner's home and found evidence that the biological mother was still living in the home, including mail addressed to and prescriptions in the name of the biological mother. When confronted with this evidence at the dispositional hearing, petitioner provided incredible explanations including that her plumber stayed in her basement and that a man she did not know provided her address to the biological father, who sent mail to the biological mother at petitioner's residence. Petitioner also denied that the biological mother had ever resided in the same home as the children, despite having been adjudicated on such allegations. Based on petitioner's testimony, the circuit court found that petitioner fabricated stories and maintained ignorance about the drug activities in her home. This Court has previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citing to *Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). Petitioner's testimony at the dispositional hearing clearly demonstrates that she failed to acknowledge the existence of any problems. She denied that the mother lived with her prior to the petition's filing and denied that she allowed the mother to live in her home after the petition's filing despite clear evidence to the contrary. Accordingly, any improvement

period would have been an exercise in futility at the children's expense, and we find no error in the circuit court's decision not to grant petitioner an improvement period.

Petitioner also contends that the circuit court erred in finding that she "would not be able to rectify the problems giving rise to the petition in the foreseeable future." However, aside from this assertion, petitioner provides no citation to law, nor any argument, regarding the termination of her parental rights. In any event, we find no error as there was ample evidence to support the termination of her parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Petitioner was adjudicated for exposing her children to their biological parents against court order and for exposing them to rampant drug abuse. As shown above, petitioner denied that she permitted the biological mother to live in her home in the face of overwhelming evidence to the contrary, showed no insight into or acknowledgment of her actions, and denied allegations contained in the petition despite having been adjudicated on the same. Simply put, petitioner failed to address any aspect of her abuse and neglect of the children and demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Circuit courts are permitted to terminate parental rights upon such evidence, and we find no error here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 10, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison